1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10   MARTHA P.,

11                        Plaintiff,          CASE NO. 3:20-cv-6236-RAJ

12          v.                                ORDER AFFIRMING
                                              DEFENDANT'S DECISION TO
13   ACTING COMMISSIONER OF                   DENY BENEFITS
     SOCIAL SECURITY,
14

15                       Defendant.

16

17          Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of

18   defendant's denial of plaintiff's application for supplemental security income ("SSI").

19   This matter is fully briefed. *See* Dkts. 13-15.

20          Despite alleging disability, plaintiff "appears to have worked more than full-time

21   for her daughters watching her grandchildren throughout most of the relevant period,"

22   according to the ALJ. AR 18. Although plaintiff contends that the ALJ misunderstands

23   how plaintiff was able to do this caretaking on her own schedule, based on a review of

24

the record, the Court concludes that the ALJ's finding that plaintiff's full-time caregiving

for her grandchildren is inconsistent with her allegations of disabling limitations is based

on substantial evidence. For example, as discussed more herein, the record reflects

plaintiff regularly reporting activities such as running around all day taking care of her

grandchildren and staying up to 11:00 PM or 1:00 AM taking care of a baby. Although

plaintiff's interpretation of the evidence has support in the record, the ALJ's

interpretation is based on substantial evidence and therefore must be upheld. For these

reasons, and as discussed more thoroughly herein, this matter must be affirmed.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

As relevant for this matter, on August 28, 2018, plaintiff filed an application for

SSI, alleging disability as of December 15, 2010, later amended to a closed period of

August 28, 2018 through February 13, 2020. *See* Dkt. 11, Administrative Record ("AR"),

p. 15; *see also* Plaintiff's Opening Brief, "Open," Dkt. 13, p. 2. The application was

denied upon initial administrative review and on reconsideration. *See* AR 15. A hearing

was held before Administrative Law Judge David Johnson ("the ALJ") on March 31,

2020. *See* AR 129-69. In a decision dated May 29, 2020, the ALJ determined plaintiff to

be not disabled. *See* AR 12-35. Plaintiff's request for review of the ALJ's decision was

denied by the Appeals Council, making the ALJ's decision the final decision of the

Commissioner of Social Security ("Commissioner"). *See* AR 1-6; 20 C.F.R. § 404.981, §

416.1481.

In plaintiff's Opening Brief, plaintiff maintains the ALJ erred by: (1) failing to

assess properly limitations caused by plaintiff's labile condition; (2) failing to give

specific, legitimate reasons, or reasons consistent with the medical record for rejecting the opinion of Dr. Daniel Pratt, PsyD or the opinion of Dr. Kamran Naficy, MD; and (3) relying solely on the state agency physicians to support the residual functional capacity ("RFC"). "Open," Dkt. 13, p. 1. Defendant disputes plaintiff's contentions. Defendant's Response Brief, "Response," Dkt. 15, p. 1.

<u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quoting *Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

<u>DISCUSSION</u>

**I.      Whether the ALJ erred when evaluating plaintiff's emotional lability and her allegations regarding limitations.**

The ALJ found at Step 2 plaintiff suffered during the relevant period from the severe impairments of seizure disorder; major depressive disorder; bipolar disorder; anxiety disorder; posttraumatic stress disorder; and, personality disorder. AR 18 (citing 20 CFR § 416.920 (c)). Plaintiff does not appear to challenge this finding, nor the finding at Step 3 that plaintiff did not suffer from a Listing level severity impairment. *See* Open,

Dkt. 13. However, the ALJ failed to credit fully some of plaintiff's allegations, *see* AR 21-25, and some of the medical opinion evidence, *see* AR 25-28, when determining plaintiff's Residual Functional Capacity ("RFC"). *See* AR 21-28. These findings are called into question by plaintiff.

First, plaintiff contends the ALJ erred when evaluating her emotional lability and the resulting limitations. Open, pp. 2-4. Defendant contends that the ALJ provided clear and convincing reasons supported by substantial evidence for the failure to credit fully plaintiff's allegations. Response, pp. 4-9.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (citing *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). The ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*)).  In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'"  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick, supra*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted).

If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and

convincing reasons for doing so." *Smolen*, *supra*, at 1284 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *see also Reddick, supra*, 157 F.3d at 722 (citing *Bunnell v. Sullivan*, *supra*, 947 F.2d at 343, 346-47). Here, the ALJ provided various specific reasons for failing to credit fully plaintiff's allegations during the relevant time of alleged disability (August 28, 2018 through February 13, 2020). *See* Dkt. 11, Administrative Record ("AR"), p. 15. *See* AR 21-25.

The ALJ noted plaintiff's allegations of limitation, including seizures and mental health issues. *See* AR 21. For example, the ALJ noted plaintiff's reported depression, suicidal thoughts, and social isolation; trouble taking care of herself and sleeping; as well as difficulty talking, hearing, remembering, completing tasks, concentrating, understanding, following instructions, getting along with others, and handling stress and changes in routine. *Id*. The ALJ found that the weight given to plaintiff's symptom reports is undermined for various reasons identified throughout the written decision, such as inconsistencies between plaintiff's symptom allegations and the contemporaneous symptom reports, and inconsistency regarding plaintiff's testimony that she does not provide care for her grandchildren while their parents work.

When relying on inconsistencies between plaintiff's allegations of limitations and the record, the ALJ discussed various aspects of plaintiff's treatment record. For example, the ALJ noted that in July 2018 plaintiff reported anxiety, fear and compulsive thoughts to her primary care doctor, but also "denied a depressed mood, sleep trouble, fatigue, hallucinations, or suicidal thoughts." AR 22 (citing Exhibit D2F/11, *i.e.,* AR

502). This July 2018 record is inconsistent with plaintiff's allegation of sleep trouble in her application for disability.

As noted by the ALJ in the written decision, at this appointment, plaintiff was fully oriented, without agitation and was observed to be not anxious, with appropriate mood and affect. *See* AR 22, 503. The ALJ also noted that it was during this time that plaintiff began her mental health treatment, and after a month and a half of treatment, on August 28, 2018, plaintiff "reported feeling better and happier, and her treating mental health providers noted that she was positive and motivated [and] was responding well to medication, with improved mood and a feeling of hopefulness." AR 22 (citing Exhibit D3F/20, 22, *i.e.*, AR 524, 526).

The ALJ also discussed plaintiff's psychological evaluation in February 2019, when she reported daily feelings of hopelessness, chronic suicidal ideation, low self-worth, sadness, and episodes of panic. *See* AR 22-23 (citing Exhibit D15 F/1, *i.e.*, AR 658). As noted by the ALJ, subsequently, in July 2019, plaintiff "reported feeling better and less stressed." AR 23 (citing Exhibit D22F/34, *i.e.*, AR 921 ("I have been doing better and less stressed with one of my daughters and grandkids [] in Vietnam"). In this treatment note, plaintiff reported planning to fly to Louisiana at the end of July, and taking her two grandkids, with an expected return by August 10. *See* AR 921. Plaintiff reported making progress towards measurable outcome of being less depressed but indicated still feeling "that her comfort comes from being wanted and taking care of others." *See id*. The ALJ noted that during this period, plaintiff's "treating mental health provider reported that [plaintiff] showed intact thinking and orientation, the claimant

denied suicidal ideation." AR 23 (citing Exhibit D 22F/36, *i.e.*, AR 923). The Court notes that not only did the treating provider assess plaintiff's thinking and reality orientation as "good," but also noted plaintiff "reports eating and sleeping well," again inconsistent with allegations of sleep problems. AR 923.

In the discussion where the ALJ failed to credit fully plaintiff's allegations in plaintiff's RFC, the ALJ also found that plaintiff saw improvement in her symptoms with treatment, and she reported that medication improved her mood and sleep. AR 23 (citing Exhibit D3F/20, 22, 28; D4F/26; D 22F/21, 36, 60, 69). The ALJ's finding is based on substantial evidence: the Court already has discussed some of the notations from the ALJ regarding improvement, *see supra*. *See, e.g.,* AR 22 (citing Exhibit D3F/20, 22, *i.e.*, AR 524, 526) (on August 28, 2018, plaintiff "reported feeling better and happier . . . . with improved mood and a feeling of hopefulness"); AR 23 (citing Exhibit D22F/36, *i.e,* AR 923 (plaintiff reported "eating and sleeping well," and "continues to do well")). The ALJ also noted that plaintiff "was generally well-groomed, properly dressed, cooperative, and oriented, with intact judgment and insight," as well as reporting feeling better in 2019. AR 23 (citing Exhibit D1F/4, 6; D5F/5; D15F/5; D22F/36).

Based on the record, as just noted and discussed, the Court concludes that the ALJ's finding of inconsistencies undermining the weight that appropriately can be given to plaintiff's symptom reports is a finding based on substantial evidence. Substantial evidence supports the ALJ's finding that plaintiff's symptom allegations in support of her disability application are not consistent with the symptom reports contemporaneously found in the treatment record.

1    When failing to credit fully plaintiff's testimony and allegations, the ALJ also

2    found that plaintiff's testimony that she does not provide care for her grandchildren while

3    their parents work, in either home in which she resides, is inconsistent with treatment

4    notes throughout the relevant time during which plaintiff "repeatedly told her treating

5    providers that she cared for her grandchildren, often all day and many evenings, beyond

6    full-time." AR 23 (citations omitted). In addition to the plethora of citations supporting

7    this statement, the ALJ specifically described some of the examples:

8
> In September 2018 [plaintiff] took the grandchildren for a week, with no
> problems other than the behavior of her separated husband, who was
9   > supposed to be helping her. She reported long hours at this responsible
> activity, including always putting the baby to bed; that she cares for them
10  > all day. She also reported taking the grand baby out for walks; that she is
> always being asked to do something with the grandchildren who are ages 5,
11  > 2, and 1; and that she is always on the move taking care of her grandkids
> and her daughters. This continued through the relevant time period with
12  > report in December 2018 that she was watching the grandchildren most
> days; and in January 2019 with reports that she was up late with the
13  > children and that she is always on the rush, go and go, her whole day is
> scheduled with grandkids.
14

15   AR 23 (internal citations omitted). The ALJ also provided more examples. *See* AR 24.

16

17    Although plaintiff argues that she no longer was caring for her grandchildren and

18   that her testimony at her Administrative hearing therefore was accurate, the ALJ

19   specifically found that plaintiff's testimony of not providing care for her grandchildren

20   "is inconsistent with treatment notes throughout the relevant time." AR 23. Therefore,

21   although plaintiff's argument that her testimony was accurate when she provided it may

22   be based on substantial evidence, the ALJ made findings based on the relevant period of

23   time, that is, August 28, 2018 through February 13, 2020, the period of alleged disability;

24

and, the question before this Court is whether the ALJ's findings regarding the period of alleged disability is based on substantial evidence. *See* AR 15; Open, p. 2. The Court concludes it is.

Specifically, the Court already has delineated some instances whereby plaintiff was reportedly telling treatment providers that she was taking care of her grandchildren, *see supra*. Many of the ALJ's citations to the record contain specific reports of plaintiff taking care of her grandchildren during or very close to the period of alleged disability. *See* AR 23 (citing AR 524 (8/23/2018: plaintiff reports taking cars of grandkids for a week), 533, 553 (10/10/2018: "I am so tired, I need to learn to say no. A 5, 2 and one-year-old is a lot. The girls are always asking mom can you do this or that"), 555 (10/24/2018:  "[plaintiff] says 'I am tired as I did not get enough sleep as I had to keep my grandkids to 1:00 AM, it is overwhelming at times as I run and care for and take my grandkids for my daughters all day' she feels that it is getting harder for her doing this as she does not have proper rest"), 557 (10/13/2018: "I am tired as I am awake until 11:30 PM taking care of the baby"), 560 (11/6/2018: "I am tired as I am always on the move taking care of my grandkids and my daughters"), 567 (12/12/2018: "I have been busy doing Christmas shopping and spending time with my grandbabies as I take them out and watch over them most of my days here in Tacoma and Seattle"), 586 (1/9/2019: "[plaintiff] has a whole days' schedule with the grandkids and some days it gets to point that 'I am so tired'"), 592 (12/29/2018: "I have been running and running, no sleep. My daughter always wants me to put the baby to bed and it gets late"), 593 (1/8/2019: "I have not been smoking as much, because of being up late with the children"), 614 (2/19/2019:

"she takes care of her grandchildren, and feels this gives her purpose in life"), 615 (2/21/2019: "my daughters will be gone for 8 days and I have to take care of 3 kids, my husband is coming to help me but I am doubtful if he will be okay"), 888 (5/30/2019: "she is a responsible person who has been entrusted with taking care of 3 grandkids"), 889 (5/30/2019: "taking care of grandkids"), 890 (5/30/2019: "goes to yoga during the day while grandkids stay in the play group"), 891 (5/30/2019: "[plaintiff] says [she has] no time for [sexuality] as grandkids take all [her] time"), 894-96, 898, 900 (same), 906, 911, 915, 917, 924 ("[plaintiff] talks about how her daughters sometimes do not seem to understand 'how [] tired I am and still they want me to keep taking care of kids all day and late into the night.' She is excited to be traveling to Louisiana with 2 grand kids to meet her dad and other family members"), 947 ("while taking care of her grandchildren is sometimes tiring, it gives reasons keep on living. She enjoys them tremendously"), 967 ("[plaintiff] expresses again 'feelings of overwhelm' in regards to the 'amount of time she spends taking care of her grandchildren, cleaning house and cooking for her daughters and their families'")).

Although the ALJ noted fewer references to caring for the grandchildren close to the end of the requested closed disability period, the ALJ also discussed reports in 2020 of plaintiff still providing care for her grandchildren. *See* AR 24. The ALJ also assessed that the RFC provided for in the written decision involves less interaction and stressors than the full time responsibilities of child care plaintiff was engaged in, potentially contributing to the worsening and overwhelm plaintiff was experiencing close to the end

of the requested closed disability time period. *See id.* The ALJ also discussed other

inconsistencies. *See* AR 24-25.

It is not the job of this Court to determine issues of credibility: that is the job of the

ALJ. *See Sample*, *supra*, 694 F.2d at 642 (citations omitted). The Court only will set

aside the Commissioner's denial of social security benefits if the ALJ's findings are

based on legal error or not supported by substantial evidence in the record. *See* 42 U.S.C.

§ 405(g). "Substantial evidence" is more than a scintilla, less than a preponderance, and

is such "'relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Magallanes*, *supra*, 881 F.2d at 750 (quoting *Davis*, *supra*, 868 F.2d at 325-

26).

Here, the ALJ found plaintiff's testimony that she does not care for her

grandchildren is inconsistent with the treatment record demonstrating a plethora of

instances where plaintiff reported caring for her grandchildren, often all day and many

evenings; and, the Court concludes that this finding is based on substantial evidence. The

Court also concludes that this finding, along with the discussed specified inconsistencies

between the treatment record and plaintiff's statements about the intensity, persistence,

and limiting effects of her symptoms, entail clear and convincing reasons supported by

substantial evidence for the ALJ's failure to credit fully plaintiff's allegations when

determining plaintiff's RFC. *See Smolen*, *supra*, at 1284 (citation omitted); *Reddick,*

*supra*, 157 F.3d at 722 (citing *Bunnell*, *supra*, 947 F.2d at 343, 346-47).

It is not the job of the court to reweigh the evidence: If the evidence "is susceptible

to more than one rational interpretation," including one that supports the decision of the

Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citing *Morgan, supra,* 169 F.3d at 599, 601).  Here, the ALJ's interpretation of plaintiff's labile emotional state and the ALJ's failure to credit fully her allegations of her limitations is based on substantial evidence and must be upheld. *See id*. The ALJ's rationale is clear and the Court is convinced.

**II.**     **Whether the ALJ erred when evaluating the medical evidence, such as the evidence provided by Dr. Daniel Pratt, PsyD and Dr. Kamran Naficy, MD.**

Plaintiff contends that the ALJ erred when evaluating the medical evidence, including the medical opinion evidence provided by Drs. Pratt and Naficy, as well as the State Agency Doctors' opinions, such as that of Dr. Rita Flanigan, PhD. Open, Dkt. 13, p. 1.

The regulations regarding evaluation of medical evidence have been amended for claims protectively filed after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

In 2017, the Commissioner issued new regulations governing how ALJs are to evaluate medical opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§

404.1520c(a)–(b), 416.920c(a)–(b). That explanation must be legitimate, as the Court will not affirm a decision that is based on legal error or not supported by substantial evidence. *See Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Thus, the regulations require the ALJ to provide specific and legitimate reasons to reject a doctor's opinions. *See also Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) (unpublished opinion) (finding that the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to how an *ALJ* should weigh or evaluate opinions, but rather the standard by which the *Court* evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence).

As plaintiff filed her claim on August 28, 2018, the ALJ applied the new regulations. *See* AR 25-28. Therefore, based on the above considerations, the Court will determine whether the ALJ's decision is free of legal error and supported by substantial evidence. "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quoting *Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

A. **Dr. Daniel Pratt, PsyD**

Dr. Pratt examined and evaluated plaintiff on February 19, 2019. *See* AR 658-63. He performed a mental status examination, in which he observed that plaintiff immediately recalled 3/3 objects. *See* AR 663. Dr. Pratt also observed that plaintiff was not able to recall any of the objects "correctly after a 5-minute delay, with 2 incorrect

insertions, suggestive of possible cry for help and/or symptom magnification." *Id*. Dr. Pratt assessed that plaintiff's "long-term memory and recall appeared fair, as evidenced by descriptions of past events." *Id*. Dr. Pratt observed plaintiff's "ability to answer 6/6 fund of knowledge questions correctly; [and] complete[] 3 of 5 on serial sevens task and 5 of 5 on forward and reverse spelling tasks." *See id*. Regarding functional limitations, Dr. Pratt opined that plaintiff suffered from five areas of severe limitation, the highest level of limitation rating available, including in her ability to communicate and perform effectively in a work setting; complete a normal workday and workweek without interruptions from psychologically based symptoms; and, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. *See* AR 661. Dr. Pratt also opined plaintiff suffered from marked limitation, meaning "a very significant limitation on the ability to perform the activity," in every other area on which he was asked to opine regarding the level of plaintiff's ability to sustain activities for a normal workday and workweek, on an ongoing, appropriate, and independent basis. *See id*.

The ALJ found Dr. Pratt's opinion to be unpersuasive. AR 27. In doing so, the ALJ found that "Dr. Pratt's very restrictive limitations are not supported by his own objective findings." *Id*. The ALJ provided the example that "Dr. Pratt reported that [plaintiff] could recall 3 out of 3 objects immediately and spell a word forward and backward, [also noting that] he reported that [plaintiff] was well-groomed and appropriately dressed." *Id*. (citing Exhibit D15F/5-6, *i.e.*, AR 662-63). Based on the record, the Court concludes these findings to be based on substantial evidence. As noted

by the ALJ, Dr. Pratt opined that plaintiff suffered from marked limitation even in the ability to understand, remember, and persist in tasks by following very short and simple instructions; make simple work-related decisions; and, ask simple questions or request assistance. *See* AR 663. The ALJ found that these opinions of marked limitations in simple abilities are not supported by the objective findings on mental status examination of plaintiff's recall of 3/3 objects immediately; and her ability to spell a word forward and backward. *See id*. The ALJ's implication that the doctor's opinions of functional limitations in simple tasks, making simple decisions, are not supported by his own objective findings of some positive cognitive results on examination of memory and attention is based on substantial evidence. It is based on such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *See Magallanes*, *supra,* 881 F.2d at 750 (quoting *Davis*, *supra,* 868 F.2d at 325-26).

When finding Dr. Pratt's opinion to be unpersuasive, the ALJ also explained that "Dr. Pratt's opinion is not consistent with the other evidence of record, as [plaintiff's] treating mental health provider reported that [plaintiff] responded well to medication and showed improved mood and motivation." AR 27 (citing Exhibit D3F/20, 22, 28, *i.e.*, AR 524 (8/23/2018: "I'm doing better and happier"), 526 (8/28/2018: "[plaintiff] has responded well, with improved mood, feeling were hopeful, and better motivated"), 532 (9/26/2018: "consumer response: I am doing better")). The ALJ's finding that Dr. Pratt's opinion is not consistent with this other medical evidence regarding plaintiff's improvement with mental health treatment is based on substantial evidence. *See Magallanes*, *supra,* 881 F.2d at 750 (quoting *Davis*, *supra,* 868 F.2d at 325-26).

For the reasons stated and based on the record, the Court concludes that the ALJ's findings related to Dr. Pratt's opinion, and the ALJ's finding it to be unpersuasive for purposes of the written decision are based on substantial evidence.

B. **Dr. Kamran Naficy, MD**

Dr. Naficy provided a two-page medical opinion on July 1, 2019, regarding limitations she reported observing since July 2018. *See* AR 642-43. Dr. Naficy indicated treating plaintiff for bipolar mood disorder, and that plaintiff suffered from symptoms of lack of concentration due to intrusive thoughts and poor short-term memory that would interfere with her ability to maintain concentration, persistence and pace for up to 2 hours continuously even at a job with simple, routine tasks and only occasional superficial interaction with others. *See* AR 642. Dr. Naficy also opined that plaintiff's mood swings and memory problems that would interfere with her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. *See* AR 642-43.

The ALJ included the following discussion in his written opinion:

> Kamran Naficy, MD, reported that [plaintiff] would have difficulty maintaining concentration, persistence, and pace for up to 2 hours continuously even in simple, routine tasks (internal citation to Exhibit D13F, *i.e.*, AR 642-43). Dr. Naficy somewhat supported her assessment with objective findings, as she noted that [plaintiff] displayed intrusive thoughts and poor short-term memory (internal citation to AR 642). Her treatment notes do not include testing or observation that reflect this degree of limitations. Likewise, the opinions related to mood swings and memory problems daily would interfere with persisting and attending are inconsistent with the treatment record as well as with [plaintiff's] activities. The evidence of record is consistent with the finding that [plaintiff] can persist at tasks because, in 2019, [plaintiff] denied suicidal ideation and reported feeling less stress, and her provider reported intact thinking and

orientation (internal citation to Exhibit D22F/36, *i.e.*, AR 923). In addition
[plaintiff] routinely reported taking care of her grandchildren, often full
time (internal citations to the D3F, D4F, D6F, D8F, D22F omitted). As
such, [plaintiff] is able to perform simple, as well as familiar complex
tasks, and Dr. Naficy's opinion is not persuasive.

AR 27.

The Court concludes based on the record that the ALJ's findings regarding the

opinion of Dr. Naficy are based on substantial evidence. For example, the ALJ noted that

Dr. Naficy simply supplied a two-page opinion and that "[h]er treatment notes do not

include testing or observation that reflect this degree of limitations." *See* AR 27 (citing

AR 642-43).

Similarly, the Court already has discussed at length plaintiff's "routinely [] taking

care of her grandchildren, often full time," *see supra*, Section I. The ALJ cited numerous

instances supporting the ALJ's finding that, more consistent with the record than Dr.

Naficy's opinion regarding limited persistence, are the many instances in the record

reflecting plaintiff working often full-time taking care of her grandchildren. *See, e.g.*, AR

524 (8/23/2018: plaintiff reports taking cars of grandkids for a week), 533, 553

(10/10/2018: "I am so tired, I need to learn to say no. A 5, 2 and one-year-old is a lot. The

girls are always asking mom can you do this or that"), 555 (10/24/2018:  "[plaintiff] says

'I am tired as I did not get enough sleep as I had to keep my grandkids to 1:00 AM, it is

overwhelming at times as I run and care or take my grandkids for my daughter's all day'

she feels that it is getting harder for her doing this as she does not have proper rest"), 557

(10/13/2018: "I am tired as I am awake until 11:30 PM taking care of the baby"), 560

(11/6/2018: "I am tired as I am always on the move taking care of my grandkids and my

daughters"), 567 (12/12/2018: "I have been busy doing Christmas shopping and spending time with my grandbabies as I take them out and watch over them most of my days here in Tacoma and Seattle"), 586 (1/9/2019: "[plaintiff] has a whole days schedule with the grandkids and some days it gets to point that 'I am so tired'"), 592 (12/29/2018: "I have been running and running, no sleep. My daughter always wants me to put the baby to bed and it gets late"), 593 (1/8/2019: "I have not been smoking as much, because of being up late with the children"), 614 (2/19/2019: "she takes care of her grandchildren, and feels this gives her purpose in life"), 615 (2/21/2019: "my daughters will be gone for 8 days and I have to take care of 3 kids, my husband is coming to help me but I am doubtful if he will be okay"), 888 (5/30/2019: "she is a responsible person who has been entrusted with taking care of 3 grand kids"), 889 (5/30/2019: "taking care of grandkids"), 890 (5/30/2019: "goes to yoga during the day while grandkids stay in the play group"), 891 (5/30/2019: "[plaintiff] says [she has] no time for [sexuality] as grandkids take all [her] time"), 894-96, 898, 900 (same), 906, 911, 915, 917, 924 ("[plaintiff] talks about how her daughter sometimes do not seem to understand 'how [] tired I am and still they want me to keep taking care of kids all day and late into the night.' She is excited to be traveling to Louisiana with 2 grand kids to meet her dad and other family members"), 947 ("while taking care of her grandchildren is sometimes tiring, it gives reasons keep on living. She enjoys them tremendously"), 967 ("[plaintiff] expresses again 'feelings of overwhelm' in regards to the 'amount of time she spends taking care of her grandchildren, cleaning house and cooking for her daughters and their families'")).

1    The Court concludes that substantial evidence supports the ALJ's finding that

2    plaintiff's ability to care for her grandchildren in the way plaintiff describes

3    contemporaneously in the treatment record is inconsistent with the opinion from Dr.

4    Naficy that plaintiff would suffer significant limitations even at a job with simple, routine

5    tasks and only occasional superficial interaction with others. *See* AR 27; *see also* AR

6    642.

7        For the reasons stated and based on the record, the Court concludes that the ALJ

8    provided specific and legitimate reasons based on substantial evidence in the record for

9    the failure to credit fully medical opinions from Dr. Pratt and Dr. Naficy. The Court finds

10   no harmful legal error in the ALJ's evaluation of the medical evidence from examining or

11   treating doctors in his written decision.

12

13   **C. State Agency Doctors**

14       Plaintiff contends the ALJ erred by relying solely on the state agency physicians to

15   support the residual functional capacity ("RFC"). Open, 7-8. Defendant contends that the

16   ALJ reasonably evaluated the opinion of the state agency reviewing doctors, such as that

17   of psychological doctor, Dr. Rita Flanigan, PhD, and that plaintiff "appears to base [her]

18   contention on her arguments [already evaluated by the Court above, *see supra,*] regarding

19   the ALJ's evaluation of the evidence regarding her limitations." Response, 14-15.

20   Specifically, defendant contends that plaintiff "does not establish that [the] ALJ's

21   assessment is incorrect by simply restating [her] arguments that the ALJ improperly

22   discounted certain evidence when the record demonstrates otherwise." Response, 14

23   (citing *Stubbs-Danielson v. Astrue*, 539 F3d 1169, 1175-76 (9th Cir. 2008)).

24

Defendant's argument is persuasive. Plaintiff does not appear to have provided an argument in reply and provides no citation in the Opening Brief in support of this contention. *See Open; see also* Plaintiff's Reply Brief, Dkt. 15.

Defendant also argues that the ALJ evaluated the opinions of state agency doctors, such as Dr. Flanigan, in accordance with the new regulations "by evaluating the persuasiveness of the opinion and how he considered the two most important persuasive factors of supportability and consistency." Response, 14 (citing AR 27; 20 CFR § 416.920c(b)(2)). As argued by defendant, when "finding the State Agency [doctor]'s opinion persuasive, the ALJ noted Dr. Flanigan supported her opinion with an explanation of the evidence used to formulate it." Response, 14 (citing AR 26, 253-72). Defendant also referenced how "the ALJ noted her assessment was generally consistent with the evidence of record because, despite some trouble with memory and concentration, plaintiff showed intact fund of knowledge, the ability to recall items immediately and recited digits forward, and intact thinking." Response, 14 (citing AR 26, 490, 574, 923).

As argued by defendant, as Dr. Flanigan's opinion was found to be consistent with the evidence, "the ALJ properly found her assessment persuasive." *Id*. (citing AR 26).

The Court agrees with defendant's assertions and agrees with defendant that because "the opinion of state agency reviewing [doctor] was consistent with the overall record, the opinions were substantial evidence upon which the ALJ could rely in determining plaintiff's RFC." Response (citing *Tonapetyan*, 242 F3d at 1149 (purportedly "explaining that a non-examining doctor's opinion that is supported by other

evidence in the record is substantial evidence on which the ALJ can rely")). The Court also agrees with defendant that plaintiff has not cited any case law in support of any "obligation [to explain] why evidence was accepted." Response, 15 (citing *Turner, supra*, 613 F.3d at 1222-23 (purportedly "explaining that an ALJ need not provide reasons when a medical opinions' limitations are consistent with the RFC finding").

CONCLUSION

Based on the foregoing reasons, the Court hereby concludes the ALJ properly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

Dated this 12th day of August, 2021.

*Richard A Jones*

The Honorable Richard A. Jones
United States District Judge